FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

26 AUG 13 PM 12:04

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. ____________________

MEREDITH ASHLEY AVERY,

Plaintiff,

v.

SOPHIE ANN WILSON,

Defendant.

---

**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION,**

**FALSE DESIGNATION OF ORIGIN, AND RELATED RELIEF**

Plaintiff Meredith Ashley Avery, proceeding pro se, professionally known as PHEE®, for her Complaint against Defendant Sophie Ann Wilson, alleges as follows:

## I. JURISDICTION AND VENUE

1. This is a civil action arising under the trademark laws of the United States, including the Lanham Act, 15 U.S.C. §§ 1051 et seq., including claims arising under 15 U.S.C. §§ 1114, 1116, 1117, and 1125(a), together with such additional state-law claims as may be asserted.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the laws of the United States governing federally registered trademarks and unfair competition.

3. This Court has supplemental jurisdiction over any related state-law claims pursuant to 28 U.S.C. § 1367 because such claims form part of the same case or controversy.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred within this District, including the commercial use of the infringing designation, consumer confusion, promotional activities, performances, and resulting injury to Plaintiff.

5. Venue is further proper because Defendant has purposefully directed commercial activities into this District through performances, advertising, promotion, media publications, digital distribution of recordings, streaming platforms, social media, and other commercial activities directed toward consumers within this District.

6. This Court possesses personal jurisdiction over Defendant because Defendant has intentionally conducted continuous and systematic commercial activities within the State of Colorado and has purposefully availed herself of the privilege of conducting business within this State through the promotion and sale of entertainment services under the challenged designation.

7. Defendant has performed, promoted, advertised, distributed recordings, participated in media interviews, maintained commercial social media accounts, and otherwise conducted

substantial commercial activity within Colorado under the challenged designation, giving rise to the claims asserted herein.

8. The acts complained of have caused and continue to cause injury to Plaintiff within this District, including injury to Plaintiff's federally protected trademark rights, goodwill, business reputation, commercial opportunities, and exclusive identity associated with the PHEE® mark.

## II. PARTIES

**Plaintiff**

9. Plaintiff, Meredith Ashley Avery ("Plaintiff"), professionally known as PHEE®, is a natural person residing in the State of Colorado.

10. Plaintiff is the owner of United States Trademark Registration No. 6,279,818 for the federally registered PHEE® service mark on the Principal Register of the United States Patent and Trademark Office for entertainment services in International Class 041.

11. Plaintiff has continuously used the PHEE® mark in commerce in connection with entertainment services including, without limitation, live musical performances, recorded music, songwriting, acting, radio appearances, modeling for entertainment purposes, promotional activities, and related commercial endeavors.

12. Through years of continuous commercial use, Plaintiff has developed substantial goodwill, valuable intellectual property rights, consumer recognition, and commercial reputation associated with the PHEE® mark.

13. Plaintiff brings this action to protect her federally protected trademark rights, prevent continuing consumer confusion, recover damages resulting from Defendant's unlawful conduct, and obtain all equitable and monetary relief authorized by law.

**Defendant**

14. Defendant, Sophie Ann Wilson ("Defendant"), is a natural person who, upon information and belief, resides in the State of Colorado.

15. Defendant has conducted and continues to conduct commercial entertainment activities under the designation PHIE.

16. Upon information and belief, Defendant has promoted, advertised, performed, distributed, marketed, licensed, and commercially exploited entertainment services under the PHIE designation through interstate commerce.

17. Upon information and belief, Defendant has maintained commercial social media accounts, digital music platforms, streaming platform artist pages, promotional websites, media profiles, and other commercial channels utilizing the PHIE designation, including an artist profile on SoundCloud.

18. At all relevant times, Defendant has acted individually and through agents, representatives, promoters, distributors, publishers, venues, digital distributors, streaming platforms, and others acting on her behalf or in concert with her.

## III. DEFINITIONS

19. Unless otherwise indicated, "PHEE®" refers to Plaintiff's federally registered service mark and the commercial identity under which Plaintiff has continuously provided entertainment services.

20. Unless otherwise indicated, "PHIE" refers to the commercial designation utilized by Defendant in connection with the entertainment services at issue in this action.

21. References to "the Mark" refer to Plaintiff's federally registered PHEE® service mark.

22. References to "the Infringing Mark" refer to Defendant's use of PHIE and any confusingly similar designation.

23. References to "Entertainment Services" include, without limitation, the following:

- live musical performances
- recorded music
- digital music distribution
- songwriting
- publishing
- radio appearances
- streaming services
- promotional appearances
- entertainment marketing
- interviews
- social media promotion
- merchandise

- licensing
- acting
- modeling for entertainment purposes
- and all related commercial entertainment activities

24. References to “Actual Notice” refer to Defendant's knowledge of Plaintiff's asserted trademark rights, including but not limited to Defendant's prior opposition proceeding before the Trademark Trial and Appeal Board and any subsequent communications placing Defendant on notice of Plaintiff's claimed rights.

25. References to “Marketplace Confusion” refer to actual or likely consumer confusion regarding the source, sponsorship, affiliation, endorsement, identity, or origin of entertainment services resulting from the concurrent commercial use of PHEE® and PHIE.

26. References to “Commercial Use” include advertising, promotion, public performance, publication, streaming, distribution, merchandising, licensing, digital exploitation, media appearances, interviews, social media activity, and any other use in commerce.

27. References to the “Expansion Period” refer to the period beginning upon Defendant's receipt of actual notice of Plaintiff's asserted trademark rights and continuing through the cessation of Defendant's allegedly infringing activities. During this period, Defendant allegedly continued expanding the commercial use and public recognition of the PHIE designation despite possessing knowledge of Plaintiff's prior rights.

## IV. FACTUAL BACKGROUND

### A. Nature of the Dispute

28. This action concerns the unauthorized commercial use of a designation alleged to be confusingly similar to Plaintiff's federally registered PHEE® trademark in connection with substantially overlapping entertainment services.

29. Plaintiff alleges that Defendant has promoted and commercially exploited the designation PHIE in connection with music, live performances, recordings, digital distribution, media appearances, and related entertainment activities in the same marketplace in which Plaintiff has long established goodwill under the PHEE® mark.

30. Plaintiff further alleges that Defendant continued expanding the commercial use of PHIE after acquiring actual knowledge of Plaintiff's asserted trademark rights, thereby increasing the scope of consumer confusion and the resulting harm to Plaintiff's federally protected mark.

**B. Overview**

31. Plaintiff adopted and continuously used the PHEE® mark in commerce years before Defendant's adoption of PHIE.

32. Plaintiff's commercial use included, among other things, original musical recordings, live performances, songwriting, promotional appearances, radio exposure, interviews, digital distribution, and other entertainment-related activities.

33. Through years of continuous use, Plaintiff developed substantial goodwill and consumer recognition associated with the PHEE® mark.

34. Defendant subsequently adopted and commercially exploited the designation PHIE in connection with substantially overlapping entertainment services directed toward many of the same consumers.

35. Plaintiff alleges that Defendant's use of PHIE has created actual and likely consumer confusion concerning the source, sponsorship, affiliation, endorsement, and identity of the parties' respective entertainment services.

**C. Prior Proceedings**

36. Defendant possessed actual knowledge of Plaintiff's asserted trademark rights no later than the commencement of proceedings before the Trademark Trial and Appeal Board.

37. During those proceedings, Defendant challenged Plaintiff's application for registration of PHEE®, asserting that the parties' marks were confusingly similar and likely to cause consumer confusion.

38. The opposition proceedings were ultimately resolved in Plaintiff's favor.

39. Plaintiff alleges that Defendant nevertheless continued commercially exploiting PHIE following those proceedings.

**D. Continuing Conduct**

40. Rather than limiting or discontinuing use of PHIE following actual notice, Defendant allegedly continued releasing music, performing publicly, promoting entertainment services, obtaining media coverage, distributing recordings, and expanding the commercial recognition associated with PHIE.

41. Plaintiff alleges that the continued commercial expansion of PHIE following actual notice substantially increased the scope of marketplace confusion and the resulting injury to Plaintiff's federally protected trademark rights.

42. Plaintiff has devoted substantial time and resources to documenting infringement, preserving evidence, contacting publishers, media outlets, digital platforms, venues, distributors,

and other third parties, and undertaking corrective efforts that Plaintiff alleges would have been unnecessary absent Defendant's continued conduct.

43. Plaintiff seeks injunctive relief, monetary damages, disgorgement of profits where authorized, enhanced damages where permitted by law, and such additional equitable relief as may be necessary to eliminate marketplace confusion and restore the distinctiveness of the PHEE® mark. This action arises from three central factual allegations: (a) Plaintiff established and continuously used the PHEE® mark in commerce before Defendant's adoption of PHIE; (b) Defendant acquired actual knowledge of Plaintiff's asserted trademark rights through proceedings before the United States Patent and Trademark Office and other interactions; and (c) notwithstanding that knowledge, Defendant allegedly continued expanding the commercial use of PHIE, thereby increasing marketplace confusion and the resulting injury to Plaintiff.

## V. PLAINTIFF'S PRIORITY OF USE AND TRADEMARK RIGHTS

### A. Adoption of the PHEE® Mark

44. Plaintiff conceived, adopted, and began using the designation PHEE as her professional entertainment identity no later than January 13, 2013, and has continuously used the mark in commerce since that time.

45. From its inception, PHEE was used as a unified commercial source identifier identifying Plaintiff as the source of her entertainment services, rather than merely as a stage name or artistic alias.

46. Plaintiff adopted the PHEE mark in connection with original musical works, live performances, songwriting, recording, promotion, acting, modeling, radio appearances, and related entertainment services.

**B. Continuous Commercial Use**

47. Since adopting the PHEE mark, Plaintiff has continuously used it in interstate commerce through the creation, promotion, advertising, marketing, distribution, licensing, and performance of entertainment services.

48. Plaintiff publicly released original musical recordings under the PHEE designation beginning in 2013 and continuing thereafter.

49. Plaintiff promoted and performed entertainment services under the PHEE mark through live performances, digital distribution, websites, social media, promotional materials, interviews, photographs, videos, and commercial advertising.

50. On or about April 7, 2014, Plaintiff publicly released the single “Sex and Love” under the PHEE mark. Contemporary promotional materials state that the release was featured on Channel 93.3, and Plaintiff will present documentary evidence supporting the release, promotion, and associated radio exposure.

51. Plaintiff continued releasing additional original musical works and promoting entertainment services under the PHEE mark over the years that followed.

52. At no time has Plaintiff abandoned the commercial use of the PHEE mark.

**C. Development of Goodwill**

53. Through continuous public use extending over many years, Plaintiff developed valuable goodwill associated with the PHEE mark.

54. Consumers, venues, promoters, journalists, members of the entertainment industry, business partners, and members of the public came to recognize PHEE as identifying Plaintiff as the source of her entertainment services.

55. Plaintiff continuously invested substantial time, labor, financial resources, and creative effort into developing and maintaining the commercial recognition associated with the PHEE mark.

**D. Federal Trademark Rights**

56. Plaintiff sought federal protection for the PHEE mark through the United States Patent and Trademark Office.

57. The United States Patent and Trademark Office ultimately issued United States Trademark Registration No. 6,279,818 on the Principal Register covering entertainment services in International Class 041.

58. The federal registration constitutes prima facie evidence of the validity of the registered mark, Plaintiff's ownership of the mark, and Plaintiff's exclusive right to use the mark in commerce in connection with the services identified in the registration, subject to the provisions of the Lanham Act.

**E. Evidence Establishing Priority**

59. Plaintiff's priority of use is supported by extensive documentary and testimonial evidence, including but not limited to:

- federal trademark records
- historical music releases
- publication dates

- copyright records
- commercial distribution records
- business formation records
- archived websites
- radio promotion and airplay records
- live performance records
- venue advertisements
- media interviews
- published articles
- promotional materials
- social media archives
- photographs
- videos
- witness testimony
- business records
- and additional documentary evidence to be introduced during these proceedings

60. Collectively, these materials establish Plaintiff's continuous commercial use of PHEE years before Defendant's adoption and commercial use of PHIE. Accordingly, Plaintiff alleges that her commercial rights and goodwill associated with the PHEE® mark substantially predate Defendant's commercial use of PHIE and form the foundation for the claims asserted herein.

## VI. DEFENDANT'S ACTUAL KNOWLEDGE OF PLAINTIFF'S RIGHTS

**A. Defendant's Knowledge of Plaintiff's Prior Use**

61. Plaintiff's commercial use of the PHEE® mark substantially predated Defendant's adoption and commercial use of PHIE.

62. Prior to commencing the proceedings described below, Defendant became aware of Plaintiff's use of PHEE® in connection with entertainment services.

63. At all relevant times thereafter, Defendant possessed actual knowledge that Plaintiff claimed ownership of and asserted trademark rights in the PHEE® mark.

**B. Trademark Trial and Appeal Board Proceedings**

64. On or about July 20, 2019, Defendant, through legal counsel, initiated Opposition No. 91249641 before the Trademark Trial and Appeal Board ("TTAB"), challenging Plaintiff's application to register the PHEE® mark.

65. In that proceeding, Defendant affirmatively alleged that PHIE and PHEE® were confusingly similar marks used in connection with overlapping entertainment services and were likely to cause consumer confusion as to source, sponsorship, affiliation, or endorsement.

66. Defendant further alleged that the parties' respective marks created similar commercial impressions, were substantially similar in pronunciation and appearance, and were used in overlapping channels of trade.

67. Through those allegations, Defendant expressly acknowledged Plaintiff's use of PHEE®, Plaintiff's commercial presence in the entertainment industry, and Plaintiff's asserted trademark rights.

68. The TTAB proceeding therefore establishes that Defendant possessed actual knowledge of Plaintiff's claimed rights in the PHEE® mark no later than July 2019.

69. In the TTAB proceeding, Defendant's position was that the parties' marks were sufficiently similar that Plaintiff's application should be refused because consumers were likely to be confused. Plaintiff alleges that Defendant thereafter continued commercially using PHIE despite having previously taken the position before the United States Patent and Trademark Office that the parties' marks were confusingly similar.

**C. Resolution of the TTAB Proceeding**

70. Defendant failed to prosecute the opposition through final determination.

71. After Defendant failed to submit the required trial brief and failed to comply with orders issued by the Trademark Trial and Appeal Board, judgment was entered against Defendant.

72. On or about January 25, 2021, the TTAB dismissed Defendant's opposition with prejudice.

73. Following dismissal of the opposition, Defendant possessed actual knowledge that Plaintiff continued asserting exclusive rights in the PHEE® mark.

74. Defendant obtained no license, consent, assignment, coexistence agreement, settlement agreement, or other authorization permitting continued commercial use of PHIE.

**D. Continued Knowledge and Conduct**

75. Plaintiff continued publicly using and promoting the PHEE® mark following the conclusion of the TTAB proceedings.

76. Plaintiff alleges that Defendant nevertheless continued commercially exploiting PHIE despite possessing actual knowledge of Plaintiff's asserted rights.

77. Upon information and belief, Defendant continued releasing musical works, promoting live performances, obtaining media coverage, maintaining artist profiles, advertising entertainment services, distributing recordings, and otherwise commercially exploiting PHIE after receiving actual notice of Plaintiff's claimed rights.

78. Plaintiff further alleges that Defendant continued expanding the commercial recognition and marketplace presence of PHIE during the Expansion Period while fully aware of Plaintiff's competing claim of ownership.

**E. Knowledge Demonstrated Through Conduct**

79. Defendant's conduct demonstrates an understanding that the parties' marks occupied overlapping commercial markets and were directed toward substantially similar consumers seeking entertainment services.

80. Rather than taking reasonable steps to reduce the likelihood of consumer confusion after acquiring actual knowledge of Plaintiff's asserted rights, Plaintiff alleges that Defendant continued commercial use of PHIE within overlapping entertainment markets.

81. Plaintiff will present documentary evidence, testimony, Defendant's prior admissions, TTAB filings, witness testimony, media publications, and additional documentary evidence demonstrating Defendant's continuing knowledge of Plaintiff's rights throughout the Expansion Period.

82. Plaintiff alleges that, from the commencement of the TTAB proceedings forward, Defendant possessed actual knowledge of Plaintiff's asserted trademark rights, thereby distinguishing Defendant's subsequent commercial expansion of PHIE from conduct occurring before such notice.

## VII. DEFENDANT'S CONTINUED USE AFTER ACTUAL NOTICE

### A. Continuing Commercial Use

83. Following the dismissal of the TTAB opposition, Defendant did not discontinue use of PHIE.

84. Instead, Defendant continued commercially using PHIE in connection with entertainment services substantially overlapping those offered by Plaintiff under the federally registered PHEE® mark.

85. Upon information and belief, Defendant continued using PHIE in connection with, among other things:

- original musical recordings
- digital music distribution
- streaming platforms
- live performances
- festival appearances
- concert advertisements
- promotional materials
- artist biographies
- interviews
- media publications
- social media
- music videos

- entertainment marketing
- and related commercial entertainment services

86. Plaintiff alleges that Defendant continued expanding the commercial visibility and marketplace recognition of PHIE throughout the Expansion Period.

**B. Continuing Commercial Expansion**

87. During the Expansion Period, Defendant continued releasing additional musical works under PHIE.

88. Defendant continued distributing recordings through digital streaming platforms.

89. Defendant continued obtaining media coverage and promotional exposure identifying Defendant as PHIE.

90. Defendant continued advertising and performing live entertainment services under PHIE.

91. Defendant continued maintaining artist profiles, social media accounts, promotional materials, and digital distribution records utilizing PHIE.

92. Plaintiff will introduce documentary evidence identifying each known commercial use occurring during the Expansion Period.

**C. Continuing Marketplace Presence**

93. Plaintiff alleges that Defendant's continuing commercial use of PHIE increased public exposure to the challenged designation after Defendant possessed actual knowledge of Plaintiff's asserted trademark rights.

94. Each additional commercial release, public performance, interview, media publication, artist profile, promotional campaign, streaming availability, playlist placement,

festival appearance, or other public-facing commercial use expanded the marketplace presence of PHIE.

95. Plaintiff alleges that the cumulative effect of those continuing commercial activities materially expanded the scope of the alleged infringement beyond the circumstances that existed when Defendant first received actual notice.

**D. Evidence of Deliberate Continuation**

96. Plaintiff alleges that Defendant possessed numerous opportunities to discontinue use of PHIE or adopt a commercially distinguishable designation.

97. Plaintiff alleges that Defendant instead continued investing time, labor, promotional efforts, and commercial resources into expanding recognition of PHIE.

98. Plaintiff alleges that Defendant continued doing so despite possessing actual knowledge that Plaintiff asserted prior trademark rights in PHEE®.

99. Plaintiff further alleges that Defendant continued such conduct despite previously representing before the United States Patent and Trademark Office that PHIE and PHEE® were confusingly similar marks likely to result in consumer confusion.

**E. Ongoing Injury**

100. Plaintiff alleges that each additional commercial use of PHIE occurring after actual notice further impaired the distinctiveness of the PHEE® mark.

101. Plaintiff further alleges that each additional public-facing use increased the population of consumers exposed to the allegedly confusingly similar designation.

102. Plaintiff alleges that the resulting harm was not limited to isolated acts of alleged infringement but instead increased over time as Defendant's commercial presence under PHIE expanded.

103. Plaintiff will present evidence establishing the chronology of Defendant's continuing commercial use, including music releases, streaming platform activity, performances, media publications, festival appearances, promotional materials, interviews, artist profiles, and additional commercial activities occurring during the Expansion Period.

104. Plaintiff alleges that the continuation and expansion of Defendant's commercial activities under PHIE after actual notice did not merely preserve the existing likelihood of confusion but increased the number of consumers, venues, promoters, journalists, distributors, streaming platforms, and other industry participants exposed to the allegedly confusingly similar designation, thereby expanding the scope of the alleged harm over time. A complete chronological chart of Defendant's known commercial activity during the Expansion Period, cross-referenced to the supporting evidence described throughout this Complaint, is being compiled by Plaintiff and will be made available in the course of discovery and, if useful to the Court, submitted in connection with any scheduling or pretrial order.

F. August 2026 Enforcement Communications, Notice, and Procedural Chronology

104A.1. On July 22, 2026, Plaintiff filed the Section 8 declaration required to maintain the federal registration for the PHEE® mark. In connection with compiling materials concerning that filing and the continued use of the registered mark, Plaintiff was awaiting publication of a Voyage Denver article featuring Plaintiff that Plaintiff had been advised several weeks earlier was forthcoming. Plaintiff ordinarily does not repeatedly monitor such publications after participating in an interview and generally returns to published press later when updating Plaintiff's website. On this occasion, however, while checking Voyage Denver for the forthcoming article in

connection with Plaintiff's then-current compilation of materials concerning the PHEE® registration, Plaintiff encountered a previously published Voyage Denver article identifying Defendant under the PHIE designation. Plaintiff's own Voyage Denver article was subsequently published on July 28, 2026. The discovery of Defendant's earlier article prompted Plaintiff to investigate Defendant's then-current commercial activity, through which Plaintiff learned that Defendant had continued commercially using PHIE following the prior TTAB proceedings. Until that discovery, Plaintiff had proceeded in good faith on the understanding that Defendant had discontinued the challenged use following the prior trademark dispute. Upon discovering Defendant's continued use, Plaintiff immediately began compiling the information and evidence described in this Complaint and its supporting exhibits, investigated the extent of the continuing activity, preserved evidence, contacted relevant third parties, provided notice, and promptly undertook legal enforcement efforts to mitigate ongoing marketplace confusion and protect Plaintiff's rights.

104A. On July 27, 2026, Plaintiff transmitted written notice asserting her federally protected rights in the PHEE® mark and requesting that Defendant cease the challenged commercial use and address the resulting marketplace confusion.

104B. Plaintiff thereafter engaged in written communications with counsel for Defendant concerning Plaintiff's asserted rights, Defendant's continuing commercial use of PHIE, and whether the dispute could be resolved without litigation.

104C. On August 12, 2026, counsel for Defendant transmitted a written response to Plaintiff. Among other matters, counsel represented that Defendant had undertaken efforts to change her artist name to "ella phie" on music platforms and asserted that Plaintiff's enforcement notices had interfered with or delayed those efforts.

104D. Plaintiff pleads the existence, timing, authorship, receipt, and contents of the August 2026 communications to the extent relevant to notice, knowledge, chronology, the parties' respective conduct, Plaintiff's diligence in enforcing her rights, and to negate any

contention of undue delay, acquiescence, abandonment, waiver, or lack of diligence. Plaintiff does not rely upon any compromise offer or settlement position contained in those communications as proof of the validity or amount of the claims asserted in this action.

104E. To the extent any factual matter referenced in the parties' communications is independently discoverable or independently provable through platform records, account records, metadata, third-party records, testimony, business records, public-facing changes, or other non-compromise evidence, Plaintiff intends to establish that matter through such independent evidence.

104F. Plaintiff has preserved the relevant communications in their original electronic form, including available transmission information, attachments, dates, sender and recipient information, and associated records, and will produce or authenticate such materials as required by the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

104G. The August 2026 correspondence further confirms that, by that time, Defendant and Defendant's counsel had actual notice of Plaintiff's present enforcement efforts and of Plaintiff's contention that continued commercial use of PHIE was causing ongoing marketplace confusion and injury.

104H. Plaintiff's enforcement activity during July and August 2026, including communications with Defendant's counsel and third-party platforms, was undertaken before the filing of this action in an effort to protect the PHEE® mark, mitigate continuing confusion, preserve evidence, and determine whether judicial intervention could be avoided.

## VIII. EVIDENCE OF ACTUAL MARKETPLACE CONFUSION

**A. Plaintiff's Initial Discovery of Defendant Through Actual Confusion**

105. Plaintiff first became aware of Defendant's commercial use of the PHIE designation through an instance of actual marketplace confusion involving an individual familiar with Plaintiff's music and professional identity.

106. Following the broadcast of Defendant's music on Channel 93.3, Plaintiff received a telephone call from Plaintiff's radio co-host, Tim Anderson, who asked whether the music being aired under the PHIE name belonged to Plaintiff.

107. Mr. Anderson remarked that the music did not sound consistent with Plaintiff's usual style, prompting him to ask whether Plaintiff had released new material or changed musical direction.

108. Plaintiff advised Mr. Anderson that the broadcast was not Plaintiff's work and that Plaintiff had no knowledge at that time of another Colorado musician commercially performing under the confusingly similar PHIE designation.

109. Plaintiff alleges that this conversation constituted Plaintiff's first awareness that another entertainer was commercially using the PHIE designation.

110. Plaintiff further alleges that this incident demonstrates actual confusion occurring within the relevant entertainment marketplace among individuals already familiar with Plaintiff's music and professional identity.

111. Mr. Anderson is preparing a sworn witness statement describing the circumstances surrounding that conversation and his understanding of the confusion at the time it occurred.

**B. Confusion Within the Colorado Entertainment Industry**

112. Plaintiff alleges that actual marketplace confusion continued to occur after Plaintiff became aware of Defendant's commercial use of PHIE.

113. One such instance occurred during production of the music video "Favorite Girl" by Pink Ranger, which premiered on October 10, 2025, and has since received public viewership.

114. Plaintiff and Channel 93.3 radio personality Smitty were both present on set participating in the production of the music video.

115. Upon being introduced to Plaintiff, Smitty immediately stated, in substance, that he remembered Plaintiff from a show Plaintiff had performed at the Oriental Theater and asked how many years earlier that had been.

116. Plaintiff had never performed at the Oriental Theater.

117. Plaintiff alleges that Smitty was instead recalling Defendant's prior performance at the Oriental Theater under the PHIE designation and mistakenly attributed that performance to Plaintiff because of the confusing similarity between the PHEE® and PHIE marks. Plaintiff's own correspondence with the Oriental Theater confirms that Defendant was booked to perform there under the PHIE designation and that Plaintiff found it necessary to advise the venue of the resulting confusion.

118. Plaintiff alleges that this interaction constitutes direct evidence of actual marketplace confusion occurring within the precise commercial market in which both parties operate.

119. Plaintiff further alleges that this confusion is particularly significant because it involved a longtime Channel 93.3 radio personality operating within the same Colorado music

community in which both Plaintiff and Defendant promoted their respective entertainment services.

120. Plaintiff further alleges that this interaction occurred naturally during the production of a commercially released music video and was not prompted by litigation or investigation.

**C. Search Engine and Platform Confusion**

121. Plaintiff has documented repeated instances in which searches for PHEE or PHIE through internet search engines, music platforms, entertainment databases, and related online services produced intermixed results relating to both parties.

122. Plaintiff alleges that searches performed through Google and other online platforms repeatedly displayed a combination of Plaintiff's and Defendant's music, biographies, artist profiles, press coverage, interviews, performance listings, videos, and related entertainment content.

123. Plaintiff further alleges that similar crossover occurred across multiple entertainment platforms and artist databases, including streaming services, music discovery platforms, and online entertainment directories.

124. Plaintiff alleges that these intermixed search results exposed consumers seeking one party's entertainment services to commercial content associated with the other, thereby increasing the likelihood of confusion regarding source, sponsorship, affiliation, endorsement, or identity.

125. Plaintiff has preserved screenshots, archived search results, platform records, and additional documentary evidence demonstrating repeated overlap in search results.

**D. Additional Evidence of Actual Marketplace Confusion**

126. Plaintiff has documented additional instances in which consumers, industry professionals, media outlets, promoters, venues, online platforms, and members of the public confused Plaintiff with Defendant or Defendant with Plaintiff.

127. Plaintiff will present documentary evidence, witness testimony, archived communications, social media records, search records, and additional documentary evidence demonstrating these incidents of actual confusion.

128. Plaintiff alleges that the documented incidents described herein are representative examples rather than an exhaustive accounting of all known instances of confusion.

**E. Relationship Between Continued Use and Continuing Confusion**

129. Plaintiff alleges that each additional commercial use of PHIE following Defendant's receipt of actual notice increased the number of consumers exposed to the confusingly similar designation.

130. Plaintiff further alleges that Defendant's continued releases, live performances, interviews, articles, artist profiles, streaming availability, media exposure, promotional campaigns, festival appearances, and related commercial activities expanded the population of consumers encountering the challenged designation.

131. Plaintiff alleges that the resulting confusion was not isolated but expanded over time as Defendant continued commercially developing PHIE after obtaining actual knowledge of Plaintiff's asserted trademark rights.

132. Plaintiff alleges that the documented incidents described above support Plaintiff's request for injunctive relief, corrective measures, monetary damages, disgorgement of profits where authorized by law, and such additional equitable relief as the Court deems appropriate.

133. Plaintiff will present witness testimony, documentary evidence, archived internet records, search engine results, media publications, streaming platform records, social media records, and contemporaneous communications establishing that actual marketplace confusion occurred repeatedly throughout the Expansion Period and was not limited to isolated incidents.

134. Plaintiff alleges that the documented instances described above demonstrate that the expansion of PHIE after Defendant acquired actual knowledge of Plaintiff's asserted rights resulted in real-world marketplace confusion extending beyond hypothetical or speculative consumer misunderstanding.

## IX. HARM TO PLAINTIFF

135. As a direct and proximate result of Defendant's continued commercial use of PHIE following actual notice of Plaintiff's asserted trademark rights, Plaintiff has suffered and continues to suffer substantial commercial, reputational, and economic injury. Defendant's continued use of PHIE has impaired Plaintiff's exclusive ability to identify herself as the sole commercial source of entertainment services offered under the federally registered PHEE® mark.

136. Plaintiff alleges that Defendant's continued commercial exploitation of PHIE has diminished the distinctiveness of the PHEE® mark by introducing a confusingly similar designation into the same marketplace for substantially overlapping entertainment services.

### A. Loss of Commercial Reputation, Goodwill, and Brand Identity

137. For more than a decade, Plaintiff has continuously invested substantial personal effort, creative labor, financial resources, and professional development into establishing public recognition of the PHEE® mark.

138. Plaintiff has cultivated a professional reputation associated with distinctive and powerful vocal performances, artistic authenticity, resilience, professionalism, and a recognizable commercial identity under the PHEE® mark.

139. The PHEE® mark functions as the unified commercial identity through which Plaintiff offers music, writing, acting, public appearances, media, entertainment services, and related creative works.

140. Defendant's continued commercial use of PHIE has impaired Plaintiff's exclusive ability to control the commercial reputation, public identity, and goodwill associated with the PHEE® mark.

141. Plaintiff alleges that the resulting marketplace confusion has weakened the distinctiveness of the PHEE® brand, diminished Plaintiff's exclusive control over the commercial identity Plaintiff spent years developing, and impaired the present and future commercial value of that identity.

142. Plaintiff further alleges that Plaintiff has been required to publicly distinguish herself from Defendant, correct misinformation, contact publishers and media outlets, request corrections or removals of infringing publications, and respond to hostile, disparaging, or dismissive comments received while attempting to mitigate the marketplace confusion allegedly created by Defendant's continued commercial use of PHIE.

143. Plaintiff alleges that these circumstances have damaged Plaintiff's professional reputation, interfered with Plaintiff's ability to present a consistent commercial identity, tarnished the commercial goodwill associated with the PHEE® mark, and diminished the value of the reputation Plaintiff spent years establishing as an entertainer known for powerful vocals, artistic strength, and professional excellence.

**B. Loss of Commercial Opportunities**

144. Plaintiff alleges that the continued coexistence of PHEE® and PHIE within the same entertainment marketplace has impaired Plaintiff's ability to promote, market, license, and expand entertainment services under the PHEE® mark without substantial risk of consumer confusion.

145. Plaintiff further alleges that the continuing confusion has adversely affected relationships with consumers, promoters, venues, journalists, broadcasters, publishers, streaming platforms, distributors, and other industry participants seeking to identify or engage Plaintiff's entertainment services.

146. Plaintiff alleges that the continuing marketplace confusion has impaired the present and future commercial value of the PHEE® mark across Plaintiff's music career, literary career, acting career, media appearances, licensing opportunities, merchandising, and related entertainment ventures.

**C. Continuing Costs of Enforcement**

147. As Defendant continued commercially exploiting PHIE after receiving actual notice, Plaintiff was required to devote increasing amounts of time and resources to investigating

infringement, documenting evidence, preserving records, researching applicable law, and pursuing enforcement of Plaintiff's trademark rights.

148. Plaintiff has expended substantial time identifying infringing uses, preserving evidence, corresponding with publishers, media outlets, venues, distributors, streaming platforms, search engines, and other third parties, preparing legal correspondence, organizing documentary evidence, and preparing this action.

149. Plaintiff maintains contemporaneous records documenting the time, labor, correspondence, investigative efforts, and related expenses reasonably incurred as a direct result of Defendant's continued conduct and intends to introduce those records in support of Plaintiff's claims for monetary and equitable relief.

150. Plaintiff further alleges that the time devoted to investigating, documenting, and addressing the continuing infringement diverted Plaintiff from revenue-generating activities, creative projects, business operations, artistic development, and professional opportunities that otherwise would have benefited Plaintiff's entertainment career and related businesses.

**D. Continuing and Future Harm**

151. Plaintiff alleges that, absent judicial intervention, Defendant's continued commercial use of PHIE will further erode the distinctiveness of the PHEE® mark, continue to impair Plaintiff's exclusive control over Plaintiff's professional identity, and increase the likelihood of continuing consumer confusion.

152. Plaintiff further alleges that each additional commercial use of PHIE following Defendant's receipt of actual notice has compounded the injury to Plaintiff's trademark rights by expanding public exposure to the confusingly similar designation.

153. Plaintiff alleges that the resulting harm cannot be fully remedied through prospective relief alone because substantial marketplace confusion, diminished goodwill, reputational injury, commercial harm, and loss of exclusive brand identity have already occurred and continue to expand.

154. Plaintiff therefore seeks permanent injunctive relief, corrective measures, disgorgement of profits where authorized by law, compensatory damages, enhanced monetary relief where permitted by law, recovery of litigation costs and other recoverable expenses, and such additional equitable relief as the Court deems necessary to restore the distinctiveness, goodwill, and commercial value of the PHEE® mark.

155. Plaintiff does not seek to prevent lawful artistic expression or fair competition. Rather, Plaintiff seeks to protect the exclusive commercial identity that Plaintiff developed, continuously used, federally registered, and diligently enforced over many years, and to obtain appropriate relief for the continuing injury allegedly resulting from Defendant's commercial use of a confusingly similar designation after acquiring actual notice of Plaintiff's asserted rights.

156. Plaintiff alleges that because Defendant's commercial expansion of PHIE continued after acquiring actual knowledge of Plaintiff's asserted rights, the resulting injury likewise expanded over time, affecting not only Plaintiff's music career but Plaintiff's unified entertainment brand, professional reputation, business opportunities, and the long-term commercial value of the federally registered PHEE® mark.

## X. EXPANSION OF CONSUMER CONFUSION AFTER ACTUAL NOTICE

157. Following Defendant's receipt of actual notice of Plaintiff's asserted rights in the federally registered PHEE® mark, Defendant did not discontinue or materially limit the commercial use of PHIE.

158. Instead, Defendant continued commercially exploiting PHIE within the same entertainment marketplace in which Plaintiff had previously established substantial goodwill under the PHEE® mark.

159. During the Expansion Period, Defendant continued, among other things:

- releasing additional musical works
- distributing recordings through digital music platforms
- publishing and promoting music videos
- increasing streaming availability and public exposure
- expanding social media promotion
- participating in interviews and media publications
- performing at concerts, festivals, and other live entertainment events
- advertising performances under PHIE
- obtaining additional radio exposure
- maintaining and expanding artist profiles on streaming services, music discovery platforms, and entertainment databases
- licensing and commercially exploiting recordings
- publishing biographies, promotional materials, and electronic press content
- and otherwise increasing the commercial recognition associated with PHIE

160. Each successive commercial use expanded the public presence of PHIE and introduced the challenged designation to additional consumers, venues, promoters, journalists, broadcasters, distributors, streaming platforms, search engines, entertainment databases, and other participants within the entertainment industry.

161. Plaintiff alleges that these continuing commercial activities occurred despite Defendant's actual knowledge of Plaintiff's asserted trademark rights and despite Defendant's prior representations before the Trademark Trial and Appeal Board that PHIE and PHEE® were confusingly similar marks likely to result in consumer confusion.

162. As Defendant's commercial presence expanded, the opportunities for marketplace confusion likewise expanded. Plaintiff alleges that this progression is demonstrated not only by the increasing volume of Defendant's commercial activities, but also by documented instances of actual confusion, including confusion reported by Plaintiff's radio co-host, confusion involving a Channel 93.3 radio personality, repeated crossover in internet search results, and the intermingling of the parties' identities across entertainment platforms and media publications.

163. Plaintiff further alleges that each additional release, performance, interview, article, playlist placement, artist profile, promotional campaign, festival appearance, radio broadcast, stream, video, media publication, search engine result, entertainment database listing, and other commercial use occurring after Defendant acquired actual knowledge of Plaintiff's asserted rights increased the number of consumers exposed to the confusingly similar designation and expanded the resulting injury to Plaintiff's federally protected trademark rights.

164. Plaintiff alleges that the continued commercial expansion of PHIE after actual notice materially increased the scope of marketplace confusion by exposing new audiences,

consumers, promoters, journalists, broadcasters, and industry professionals to the challenged designation, thereby compounding the injury to Plaintiff's goodwill and diminishing Plaintiff's exclusive control over the PHEE® mark.

165. Plaintiff further alleges that the documented instances of actual confusion described in this Complaint are representative rather than exhaustive, and that the continued commercial expansion of PHIE substantially increased the likelihood that additional instances of confusion would occur as Defendant's public recognition continued to grow.

166. Plaintiff alleges that the continuing expansion of Defendant's commercial activities after acquiring actual knowledge of Plaintiff's asserted rights transformed what might otherwise have remained a limited trademark dispute into a continuing pattern of marketplace confusion requiring increasingly extensive investigation, documentation, corrective efforts, and ultimately judicial intervention.

167. Plaintiff further alleges that Defendant's continued expansion of PHIE after actual notice compounded the injury to Plaintiff's commercial identity, professional reputation, goodwill, and exclusive trademark rights, thereby increasing the scope of both the equitable and monetary relief necessary to eliminate consumer confusion, restore the distinctiveness of the PHEE® mark, and fully remedy the harm alleged in this action.

168. Plaintiff alleges that the evidence presented in this action demonstrates not merely continued coexistence of similar marks, but the progressive expansion of consumer confusion after Defendant possessed actual knowledge of Plaintiff's asserted rights, thereby necessitating comprehensive injunctive and monetary relief.

## XI. CAUSES OF ACTION

### COUNT I

### Federal Trademark Infringement

(15 U.S.C. § 1114)

169. Plaintiff realleges and incorporates by reference Paragraphs 1 through 168 as though fully set forth herein.

170. This Count arises from Defendant's alleged commercial expansion of PHIE after acquiring actual knowledge of Plaintiff's asserted rights in the federally registered PHEE® mark.

171. Plaintiff alleges that:

- Plaintiff established priority of use of PHEE® before Defendant's adoption of PHIE;
- Defendant acquired actual knowledge of Plaintiff's asserted rights through the TTAB proceedings and related events;
- Defendant thereafter allegedly continued expanding the commercial use of PHIE within overlapping entertainment markets; and
- that conduct allegedly resulted in actual and likely consumer confusion and injury to Plaintiff's federally protected trademark rights.

172. Plaintiff therefore seeks all remedies authorized under the Lanham Act for this claim, together with any additional equitable and monetary relief to which Plaintiff may ultimately be entitled.

### COUNT II

**False Designation of Origin and Unfair Competition**

(15 U.S.C. § 1125(a))

173. Plaintiff realleges and incorporates by reference Paragraphs 1 through 172 as though fully set forth herein.

174. This Count likewise arises from Defendant's alleged commercial expansion of PHIE after Defendant acquired actual knowledge of Plaintiff's asserted rights.

175. Plaintiff alleges that the challenged commercial activities, taken together, created or increased actual or likely confusion regarding source, sponsorship, affiliation, endorsement, identity, or origin of the parties' entertainment services.

176. Plaintiff seeks all relief authorized by law for this claim.

**COUNT III**

**Colorado Common-Law Trademark Infringement and Unfair Competition**

177. Plaintiff realleges and incorporates by reference Paragraphs 1 through 176 as though fully set forth herein.

178. Through Plaintiff's continuous and prior use of the PHEE® mark in commerce within Colorado, Plaintiff has acquired common-law trademark rights in the mark, and the mark has acquired secondary meaning identifying Plaintiff as the source of the entertainment services offered under it, independent of and in addition to Plaintiff's federal registration.

179. Defendant's use of the confusingly similar PHIE designation in connection with substantially overlapping entertainment services within Colorado is likely to cause, and has actually caused, confusion, mistake, or deception among consumers as to the source,

sponsorship, or affiliation of the parties' respective entertainment services, as alleged throughout this Complaint, including in Section VIII above.

180. Defendant's conduct constitutes trademark infringement and unfair competition under the common law of the State of Colorado.

181. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injury to her goodwill, reputation, and commercial identity in Colorado, as alleged throughout this Complaint, including in Section IX above.

182. Plaintiff seeks all remedies available under Colorado common law, including injunctive relief and damages, to the extent such remedies are not duplicative of relief awarded under Counts I and II.

## XII. DEMAND FOR ACCOUNTING

183. Plaintiff realleges and incorporates by reference Paragraphs 1 through 182 of this Complaint as though fully set forth herein.

184. Plaintiff alleges that the full extent of the revenues, profits, royalties, licensing income, commercial benefits, and other financial gains derived from Defendant's commercial expansion of PHIE is presently unknown and cannot be determined without access to records and information within Defendant's possession, custody, or control.

185. Plaintiff further alleges that Defendant's continued commercial expansion of PHIE after acquiring actual knowledge of Plaintiff's asserted trademark rights generated commercial activity through numerous channels, including digital distribution, streaming platforms, live performances, media promotion, licensing, merchandising, sponsorships, endorsements, and

related entertainment services, the financial details of which are uniquely within Defendant's possession, custody, or control.

186. Plaintiff is informed and believes that Defendant possesses books, records, electronically stored information ("ESI"), royalty statements, distributor reports, publishing records, licensing agreements, contracts, accounting records, banking records relating to the PHIE business, platform analytics, and other financial documents necessary to determine the revenues, profits, and commercial benefits attributable to Defendant's commercial expansion of PHIE.

187. Plaintiff further alleges that an accounting is necessary to determine the nature, extent, and financial impact of Defendant's commercial activities conducted under the PHIE designation, including the revenues, profits, royalties, and other commercial benefits generated throughout the Expansion Period following Defendant's acquisition of actual knowledge of Plaintiff's asserted trademark rights.

188. Plaintiff therefore requests that the Court order Defendant to produce a complete accounting, under oath, of all revenues, profits, royalties, licensing income, publishing income, mechanical royalties, performance royalties, synchronization income, advertising revenue, sponsorship income, endorsement income, merchandise sales, appearance fees, ticket sales, streaming revenue, subscription revenue, crowdfunding proceeds, affiliate income, and all other commercial income, compensation, or financial benefits derived directly or indirectly from Defendant's commercial expansion of PHIE.

189. Plaintiff further requests that Defendant produce all books, records, electronically stored information ("ESI"), agreements, contracts, reports, and other documents reasonably

necessary to verify the completeness and accuracy of the accounting, including but not limited to:

- royalty statements
- distributor reports
- digital distribution records
- streaming platform reports and analytics
- publishing agreements
- licensing agreements
- synchronization licenses
- performance rights organization records
- performance contracts
- festival agreements
- venue contracts
- booking agreements
- sponsorship agreements
- endorsement agreements
- advertising agreements
- merchandising agreements
- artist management agreements relating to PHIE
- invoices
- receipts
- payment records

- banking records relating to commercial activities conducted under PHIE
- accounting ledgers
- general ledgers
- profit and loss statements
- balance sheets
- tax records relating to revenues generated under PHIE
- metadata associated with commercially distributed recordings
- platform dashboards and reporting portals
- correspondence relating to the commercial exploitation of PHIE where relevant to revenues generated
- and all other documents sufficient to determine the revenues, profits, expenses, commercial value, and financial benefits associated with Defendant's commercial expansion of PHIE

190. Plaintiff requests that the accounting encompass the period beginning with Defendant's acquisition of actual knowledge of Plaintiff's asserted trademark rights and continuing through the date of final judgment, together with such earlier periods as the Court determines to be relevant and recoverable under applicable law.

191. Plaintiff further requests that Defendant verify the accounting under oath and certify that the accounting is true, complete, and accurate to the best of Defendant's knowledge, information, and belief.

192. Plaintiff further requests that the Court retain jurisdiction to enforce the accounting, resolve disputes concerning the completeness or accuracy of the accounting, compel the

production of additional records if necessary, appoint a special master or other appropriate neutral if warranted by the complexity of the accounting, and award such additional monetary or equitable relief as the evidence ultimately supports.

193. Plaintiff further alleges that because the records necessary to determine the full extent of Defendant's commercial expansion, revenues, profits, and financial benefits are within Defendant's exclusive possession, custody, or control, an accounting is necessary to ensure that any monetary relief ultimately awarded by the Court is complete, accurate, equitable, and based upon the full scope of Defendant's commercial activities conducted under the PHIE designation.

## XIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in Plaintiff's favor and against Defendant and that the Court award the following relief, to the fullest extent permitted by law:

### A. Injunctive Relief

194. Enter preliminary (if appropriate) and permanent injunctive relief prohibiting Defendant, together with Defendant's officers, agents, employees, representatives, successors, assigns, distributors, publishers, promoters, and all persons acting in active concert or participation with Defendant who receive actual notice of the Court's Order, from using PHIE, or any designation confusingly similar to PHEE®, in connection with entertainment services, including but not limited to:

- music
- songwriting

- sound recordings
- live performances
- entertainment services
- acting
- modeling
- social media
- streaming platforms
- websites
- domain names
- merchandise
- advertising
- promotional materials
- interviews
- sponsorships
- endorsements
- and any other commercial activity likely to cause confusion with Plaintiff's federally registered PHEE® mark

**B. Corrective Relief**

195. Order Defendant to remove, discontinue, correct, or cause the removal or correction of all infringing uses of PHIE from every platform, publication, distributor, promoter, venue, publisher, and commercial channel within Defendant's possession, custody, or control.

196. Order Defendant to take all commercially reasonable actions necessary to correct artist biographies, electronic press kits, metadata, copyright attribution metadata, publishing records, distributor records, royalty registrations, ISRC metadata, digital distribution records, search engine listings under Defendant's control, and other commercial records so that Defendant's works are identified using Defendant's legal name or another non-confusing designation.

197. Order Defendant, to the extent authorized by law, to abandon, amend, cancel, relinquish, or otherwise cease using registrations, assumed business names, usernames, domain names, social media handles, and other commercial identifiers incorporating PHIE that are likely to cause confusion with Plaintiff's federally registered PHEE® mark.

198. Order Defendant to request removal or correction, where reasonably available, of infringing references appearing in third-party articles, interviews, artist profiles, promotional listings, venue pages, entertainment databases, and similar publications that Defendant created, controlled, authorized, or materially contributed to.

199. Order Defendant to destroy, surrender, recall where legally required, or permanently remove from commerce all physical promotional materials, merchandise, signage, packaging, advertising materials, and other tangible commercial materials bearing the infringing designation.

200. Require Defendant to file a sworn certification under penalty of perjury identifying every reasonable step taken to comply with the Court's injunction and corrective orders.

**C. Monetary Relief**

201. Order the accounting described in Section XII of this Complaint.

202. Award Plaintiff Defendant's profits attributable to the infringing commercial expansion of PHIE to the fullest extent authorized by the Lanham Act and applicable law.

203. Award Plaintiff all actual damages proven at trial, including but not limited to:

- loss of goodwill
- diminution in the value of the PHEE® mark
- loss of commercial opportunities
- loss of licensing opportunities
- loss of promotional opportunities
- corrective advertising
- costs of restoring Plaintiff's commercial identity
- reputational injury to Plaintiff's commercial brand
- diversion of consumers
- diminished distinctiveness of Plaintiff's federally registered mark
- business interruption
- measurable enforcement-related economic losses recoverable under applicable law
- and all other compensable economic injury established by the evidence

204. In determining monetary relief, consider Defendant's continuing commercial expansion of PHIE after acquiring actual knowledge of Plaintiff's asserted rights, including the resulting expansion of consumer confusion, public exposure, goodwill associated with PHIE, and injury to Plaintiff's trademark rights.

205. Award enhanced damages, treble damages where authorized by statute, prejudgment interest, post-judgment interest, and all other monetary relief authorized by applicable law.

**D. Fees, Costs, and Enforcement**

206. Declare this to be an exceptional case, if warranted by the evidence and applicable law, and award Plaintiff recoverable attorney's fees, taxable costs, litigation expenses, and all other recoverable amounts authorized by the Lanham Act or other applicable law.

207. Award Plaintiff compensation, to the extent recoverable by law, for the measurable time, labor, investigative efforts, business interruption, and economic losses reasonably incurred in investigating, documenting, preserving evidence of, and pursuing enforcement of Plaintiff's trademark rights, as supported by contemporaneously maintained records and evidence presented at trial.

208. Retain continuing jurisdiction over this matter to enforce the Court's injunctions, accounting orders, corrective measures, compliance requirements, and any subsequent orders necessary to effectuate the judgment.

**E. Other Relief**

209. Award such other, further, different, or supplemental legal and equitable relief as the Court deems just, proper, and necessary to eliminate continuing consumer confusion, restore the distinctiveness and goodwill of the PHEE® mark, and fully compensate Plaintiff for the injuries proven at trial.

Dated: ________________, 2026

Respectfully submitted,

8/13/2026

s/ Meredith Ashley Avery

Meredith Ashley Avery

11720 W. Colfax Ave.

Lakewood, CO 80215

Telephone: 720-626-2396

E-mail: meredithpheeavery@gmail.com

Plaintiff, Pro Se